RUSS AUGUST & KABAT
Benjamin T. Wang (CA SBN 228712)
bwang@raklaw.com
Andrew D. Weiss (CA SBN 232974)
aweiss@raklaw.com
Neil A. Rubin (CA 250761)
nrubin@raklaw.com
Christian W. Conkle (CA SBN 306374)
cconkle@raklaw.com
Daniel B. Kolko (CA SBN 341680)
dkolko@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Plaintiff
*TS-Optics Corporation*

RUSS, AUGUST & KABAT

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

TS-OPTICS CORPORATION,

Plaintiff,

v.

MICROSOFT CORPORATION,

Defendant.

Case No. 8:24-cv-01974-DOC-DFM

**PLAINTIFF'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**

To be heard by Special Master via Zoom
Hearing Date: October 9, 2025
Hearing Time: 10:00 a.m. Pacific

RUSS, AUGUST & KABAT

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

II. DISPUTED TERMS ........ 2

A. Dr. Barrett's Level Of Ordinary Skill For The '055 Patent Is Inappropriate ........ 2

B. Unipolar Magnets ('055 Patent): Plain And Ordinary Meaning, Which Is "Magnets That Each Have A Face With A Single Pole" ........ 3

C. Server And Client Terms ('709 Patent): Plain And Ordinary Meaning; Not Indefinite ........ 5

1. Virtual Controller Server (Microsoft's Term 6) ........ 6

2. Virtual Controller Client (Microsoft's Term 10) ........ 6

D. Unit Terms ('709 Patent): Plain And Ordinary Meaning; Not Indefinite ........ 8

1. Button Setting Adjusting Unit (Microsoft's Term 1) ........ 8

2. Client Message Interfacing Unit (Microsoft's Term 3) ........ 12

3. Button Setting Generating Unit (Microsoft's Term 7) ........ 12

4. Server Message Interfacing Unit (Microsoft's Term 8) ........ 12

5. Key Mapping Unit (Microsoft's Term 9) ........ 13

E. Filter And Interface Terms ('709 Patent): Plain And Ordinary Meaning; Not Indefinite ........ 13

III. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

Cases

*AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236 (Fed. Cir. 2007) .......... 10

*Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361 (Fed. Cir. 2012) .......... 10

*Free Stream Media Corp. v. Alphonso Inc.*, No. 2:15-CV-1725-RWS, 2017 WL 1165578 (E.D. Tex. Mar. 29, 2017) .......... 6

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014) .......... 3

*Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363 (Fed. Cir. 2025) .......... 7, 9, 11

*Skky, Inc. v. MindGeek, s.a.r.l.*, 859 F.3d 1014 (Fed. Cir. 2017) .......... 6, 14

*Team Worldwide Corp. v. Intex Recreation Corp.*, No. 2020-1975, 2021 WL 4130634 (Fed. Cir. Sept. 9, 2021) .......... 9

*TecSec, Inc. v. Int'l Bus. Machs. Corp.*, 731 F.3d 1336 (Fed. Cir. 2013) .......... 6, 14

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) .......... 7, 9, 11

*Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003 (Fed. Cir. 2018) .......... 6

Pursuant to Special Master Order No. SM-1 (Dkt. 37-1), TS-Optics hereby submits its Responsive Claim Construction Brief.

## I. INTRODUCTION

Microsoft's 11 indefiniteness arguments should be rejected because they ignore the intrinsic evidence and controlling Federal Circuit law. Despite bearing the burden for all 11 terms, Microsoft relies on conclusory arguments that ignore contrary intrinsic and extrinsic evidence, including its own admissions and expert testimony. Having failed to address the relevant evidence, Microsoft's indefiniteness arguments about should be rejected.

With respect to the '055 patent, just a few month ago, Microsoft argued to the Patent Office that "unipolar magnets" in the '055 patent had a definite and known meaning to a POSITA similar to the meaning proposed by TS-Optics. Microsoft's argument was supported by the declaration of Dr. Mansuripur. Not only does Microsoft make the opposite argument here, but it neither acknowledges nor explains why "unipolar magnets" previously had a plain and ordinary meaning only to have lost that meaning during the intervening months. Even more confusingly, Microsoft's new expert, Dr. Barrett, approvingly cites Dr. Mansuripur's opinion while ignoring the fact that Dr. Mansuripur's conclusion is directly contrary to Dr. Barrett's conclusion.

With respect to the '709 patent, all of the terms relate to well-known structural concepts (server, client, filters, a user interface, and software components). Rather than analyze the full scope of the intrinsic evidence, Microsoft relies on the unsupported and flawed opinions of Dr. Barrett who, like with the '055 patent, ignores evidence that does not support his preferred argument. For example, Microsoft and Dr. Barrett argue that a server and client are not sufficiently structural despite Dr. Barrett's admissions that a server, client, and server/client relationship are well-known concepts within the art. Instead, they argue that the concepts are too broad to be structural, which is directly against Federal Circuit precedent.

RUSS, AUGUST & KABAT

Microsoft's and Dr. Barrett's arguments are grounded in the need to justify overly aggressive, unsupportable litigation positions, and not claim construction law. As addressed in TS-Optics' Opening Brief, when the intrinsic evidence is considered in full, the disputed terms are not indefinite, and Microsoft's arguments should be rejected.

## II. DISPUTED TERMS

### A. Dr. Barrett's Level Of Ordinary Skill For The '055 Patent Is Inappropriate

For the '055 patent, consistent with the claims and disclosure of the '055 patent, TS-Optics proposes that a POSITA have experience in designing optical storage devices. Dkt. 55 at 4. Though Microsoft's Opening Brief is silent on the topic, Dr. Barrett opined that a POSITA only needs experience with "disk drives or in a similar field." Dkt. 56-1 at ¶ 16. Dr. Barrett's proposed level of ordinary skill is overly broad and inconsistent with the '055 patent itself, which describes the field of the invention more narrowly as relating "to an optical disk drive, and more particularly, to an optical disk driver including an optical pickup actuator employing a Lorenz force generated in a coil by electromagnetic induction." '055 patent at 1:15-19. Optical pickup actuators are not used in generic "disk drives," which can use, for example, magnetic platters (in a hard disk drive) or electronics (in a solid state drive) to store data instead of optical disks. Dkt. 55-6 at ¶¶ 24-25. Dr. Barrett does not explain why he expands the level of skill in the manner he proposes.

The level of skill for the '055 patent is important here. As Microsoft itself argued to the Patent Office, "unipolar magnets" has a plain and ordinary meaning "[i]n the optical pickup actuator context." Dkt. 55-4 at 21-22. Microsoft's proposed POSITA need not have experience with optical pickup actuators (or optical disk drives at all). But, as Microsoft's own argument to the Patent Office demonstrates, this experience is important to understanding the "unipolar magnets" term in the '055 patent.

RUSS, AUGUST & KABAT

Because it is consistent with the '055 patent itself, the Court should adopt TS-Optics' proposed level of ordinary skill for the '055 patent.

**B. Unipolar Magnets ('055 Patent): Plain And Ordinary Meaning, Which Is "Magnets That Each Have A Face With A Single Pole"**

As explained in the Opening Brief (Dkt. 55 at 4-7), the "unipolar magnets" term is not indefinite in the context of the '055 patent, a fact Microsoft itself recently argued to the Patent Office: "In the optical pickup actuator context, a unipolar magnet refers to using the magnet such that only one pole-either north or south (but not both)-faces and interacts with a particular coil." Dkt. 55-4 at 21-23. Both Dr. Mansuripur (Microsoft's pre-claim construction expert) and Dr. Shen agree that the term is not indefinite. Dkt. 55-5 at ¶¶ 67-70, 37-39; Dkt. 55-6.

Microsoft takes a contrary position here because it is no longer applying an analysis consistent with Federal Circuit precedent or intrinsic evidence. Rather than consider the term in light of the intrinsic evidence, Microsoft and Dr. Barrett assume that unipolar magnets, standing alone, refers to theoretical magnetic monopoles (a magnet with a single pole). Dkt. 56 at 22-23; Dkt. 56-1 at ¶¶ 58-61. Neither Microsoft (now) nor Dr. Barrett consider the context of the term in the claims or intrinsic evidence before reaching their conclusion. Then, with the preconceived notion that "unipolar magnets" refers to magnetic monopoles, Microsoft and Dr. Barrett consult the intrinsic evidence to determine whether there is any statement that expressly "clarifies the scope of the term." Dkt. 56 at 23; Dkt. 56-1 at ¶ 62. In other words, Microsoft and Dr. Barrett determine a plain meaning when removed from the intrinsic evidence (magnetic monopoles) and then look for intrinsic evidence that expressly alter this meaning.

Microsoft's current argument is not consistent with how indefiniteness (or claim construction) is supposed to be analyzed. Indefiniteness is judged by the "claims, read in light of the specification delineating the patent, and the prosecution history." *E.g.*, *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

RUSS, AUGUST & KABAT

Put another way, the term cannot be considered in isolation (as Microsoft and Dr. Barrett do) but must be considered in its full context. The meaning of "unipolar magnets," in its full context, is captured in Microsoft's admission to the Patent Office and as discussed more fully in TS-Optics' Opening Brief. *See* Dkt. 55-4 at 21-23; Dkt. 55-5 at ¶¶ 67-70, 37-39; Dkt. Dkt. 55 at 4-7; Dkt. 55-6.

Moreover, Microsoft and Dr. Barrett did not actually seek intrinsic evidence to "clarif[y] the scope of the term." If they had, they would have come to the same conclusion Microsoft (previously), Dr. Mansuripur, Dr. Shen, and TS-Optics came to. Instead, Microsoft and Dr. Barrett ignore or misinterpret relevant intrinsic evidence. For example, Microsoft and Dr. Barrett both recognize that claim 40 of the '055 patent requires that the claimed "unipolar magnets" "create an electromagnet force to move the blade." Dkt. 56 at 25; Dkt. 56-1 at ¶ 57 ("that interacting create an electromagnet force to move the blade"). Neither Microsoft nor Dr. Barrett, however, acknowledge that this claim limitation can ***only*** be satisfied if the claimed "unipolar magnets" have both poles (and are therefore not magnetic monopoles) because both poles are required to create magnetic flux that creates the magnetic field and the claimed electromagnet force. *See* Dkt. 55-6 at ¶¶ 43-47. Despite being well aware of the argument and evidence contrary to its position, Microsoft's Opening Brief does not address this issue at all.

Microsoft and Dr. Barrett also misinterpret the disclosure of the specification. The specification does not, as Microsoft now argues, describe the claimed "unipolar magnets" as magnetic monopoles. Rather, as Dr. Mansuripur and Microsoft (previously) explained, the specification teaches to a POSITA that the claimed invention refers to "unipolar magnets" because it requires that the magnet face facing the coil is a single pole. Dkt. 55-5 at ¶¶ 66-70; Dkt. 55-4 at 21-23. In Figure 5 and its related discussion, as Dr. Mansuripur explains, the south pole is not illustrated because "its illustration was not relevant to the magnetic interaction," and it was not necessary because the poles were already "more clearly label[ed]" in Figure 2. Dkt.

55-5 at ¶ 68. A POSITA would, however, understand that the poles must have been present in Figure 5. *See id.*

Microsoft's argument that TS-Optics is proposing to "rewrite" the claim language should similarly fail. The "unipolar magnets" term does not need to be rewritten because the Court can simply adopt its plain and ordinary meaning, which was not disputed until claim construction in this litigation.

Further contradicting the veracity of Dr. Barrett's argument is that Dr. Barrett was not only aware of Dr. Mansuripur's opinion, but Dr. Barrett cites Dr. Mansuripur's opinion in support of his own. Dkt. 56-1 at ¶ 58 (positively citing paragraph 67 of Dr. Mansuripur's opinion). The cited paragraph of Dr. Mansuripur's opinion also directly contradicts Dr. Barrett's conclusion, yet Dr. Barrett (and Microsoft) provide no explanation why some of Dr. Mansuripur's testimony is correct but most of it (including his conclusions) is wrong. *See* Dkt. 55-5 at ¶ 67.

The Court should therefore reject Microsoft's argument in favor of the construction proposed by TS-Optics: plain and ordinary meaning, which is "magnets that each have a face with a single pole." The '055 patent describes the "Field of the Invention" as "relat[ing] to an optical disk drive…including an optical pickup actuator employing a Lorenz force generated in a coil by electromagnetic induction." '055 patent at 1:15-19. Microsoft has already admitted that, in the field of optical pickup actuators, the "unipolar magnets" term has a plain and ordinary meaning consistent with TS-Optics' proposal. Microsoft's party admission is unrebutted and supported by the intrinsic evidence.

### C. Server And Client Terms ('709 Patent): Plain And Ordinary Meaning; Not Indefinite

The terms "virtual controller server" and "virtual controller client" are not indefinite because a "server" and "client" are well-known structures in the industry, as addressed in TS-Optics' Opening Brief. Dkt. 55 at 7-13.

**1. Virtual Controller Server (Microsoft's Term 6)**

Despite bearing the burden of showing that means plus function applies, for the "virtual controller server" term, Microsoft simply assumes that the term is subject to means plus function. Dkt. 56 at 15 ("Term 6 is similarly indefinite because it is an MPF term that lacks sufficient structure corresponding to the structure."). This term does not use "means," and it is therefore presumed to not be a means plus function term. *E.g.*, *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1007 (Fed. Cir. 2018). Microsoft's unsupported conclusion is not sufficient to rebut this presumption. Nor is Microsoft's assumption correct, as discussed in TS-Optics' Opening Brief. Dkt. 55 at 8-11. Because it is Microsoft's burden to demonstrate that the "virtual controller server" term is subject to means plus function at all, any argument that Microsoft belatedly raises in its response brief should be struck as untimely and improper.

**2. Virtual Controller Client (Microsoft's Term 10)**

Microsoft argues that the "virtual controller client" term is subject to means plus function because it "does not connect sufficient structure," citing paragraph 72 of Dr. Barrett's declaration. Dkt. 56 at 21. Dr. Barrett's testimony is not, however, consistent with Federal Circuit precedent. The Federal Circuit held that a term can be structural "even if the term covers a broad class of structures and even if the term identifies the structures by their function." *TecSec, Inc. v. Int'l Bus. Machs. Corp.*, 731 F.3d 1336, 1347 (Fed. Cir. 2013) (addressing the term "system memory"); *see also, e.g.*, *Skky, Inc. v. MindGeek, s.a.r.l.*, 859 F.3d 1014, 1019-20 (Fed. Cir. 2017) (similar holding for "wireless device"); *Free Stream Media Corp. v. Alphonso Inc.*, No. 2:15-CV-1725-RWS, 2017 WL 1165578, at *24-25 (E.D. Tex. Mar. 29, 2017) (similar holding for "client device"). As Dr. Barrett testifies, "'client in the context of computing and network systems is … typically used to denote a device or program that requests services from a corresponding 'server.'" Dkt. 56-1 at ¶ 72. He further testifies that a client is "defined in industry standard coursework as a computer that

gets information from another computer called server in the context of client-server model of computer network." Dkt. 56-1 at ¶ 72. Dr. Barrett nonetheless concludes that the term is not structural because it refers to a broad class of potential clients. *TecSec* and similar Federal Circuit precedent reject Dr. Barrett's overbreadth argument as a basis to argue a term is not structural.

Microsoft also dismisses claim 1's recitation of various components of the claimed "virtual controller client" as merely "high level" descriptions with "no algorithm and no structure." Dkt. 56 at 21. As described in TS-Optics' Opening Brief and below, Microsoft's argument is wrong and contrary to controlling precedent. Claim 1 and its dependent claims outline various components of the client and the algorithms performed by each component. *See* Dkt. 55 at 13-25. Though it should be unnecessary, the claiming of various structural components of the claimed client is further evidence that client is structural.

Microsoft's cited cases do not support its factually-unsupported argument. In *Optis Cellular Tech., LLC v. Apple Inc.*, the term at issue was "selecting unit." 139 F.4th 1363, 1381-83 (Fed. Cir. 2025). Optis, the plaintiff, emphasized that a "selecting unit" "may be implemented in *either* hardware *or* software." *Id.* at 1383 (quoting plaintiff's appeal brief; emphasis in original). That admission and, among other things, the surrounding terms merely being functional ("configured to randomly select") were found by the Federal Circuit to not supply sufficient structure. *Id.* at 1382-83. None of these facts are present here. As discussed in TS-Optics' Opening Brief, the "virtual controller client" is software (not hardware), and many of its components and algorithms are discussed.

Microsoft's other cited case is no better. In *Williamson v. Citrix Online, LLC*, it was admitted that the claimed "module" used a nonce word. 792 F.3d 1339, 1350-51 (Fed. Cir. 2015). Moreover, the remainder of the claim language ("for receiving," "for relaying," and "for coordinating") provided no further structure. *Id.* Again, neither of these facts is true here because "client" is not a nonce word, and the

RUSS, AUGUST & KABAT

various components in claim 1 include algorithms.

Unlike in *Optis* and *Williamson*, the "virtual controller client" is not simply a "black box" where any structure that performs a recited functionality can meet the claim limitation. For example, as described in TS-Optics' Opening Brief, and as Dr. Barrett appears to agree given his discussion of a POSITA's understanding of "client," the claimed client could not be any standalone software or hardware that provides "remote key input to an application." Instead, the claimed "client" requires that the "virtual controller client" be software (the "what") in a client relationship with a remote virtual controller server (the "how"). And claim 1 does not stop there, providing further description of the various software units, interfaces, and filters that must be present in the client and the algorithms each of these software pieces must perform, as addressed in TS-Optics' Opening Brief.

Microsoft has therefore not shown that the "virtual controller client" term is a means plus function element.

**D. Unit Terms ('709 Patent): Plain And Ordinary Meaning; Not Indefinite**

A full review of the intrinsic evidence, including the claim language and specification, demonstrates that the unit terms are structural because they refer to software and algorithms. *See* Dkt. 55 at 13-21.

**1. Button Setting Adjusting Unit (Microsoft's Term 1)**

Microsoft improperly addresses the term in isolation from the remainder of the claim language and other intrinsic evidence, like it does for all of its indefiniteness arguments. Microsoft argues that "unit," when used in claim language in other patents, has been found to invoke means plus function and, based on paragraphs 88-89 of Dr. Barrett's declaration, that the "button setting adjusting unit" term "provides a generic description of function and never attributes 'unit' to a particular structure or group of structures." Dkt. 56 at 1-3; *see also id.* at 3-4 (analogizing *Williamson* because, purportedly, "'unit' does not indicate any

RUSS, AUGUST & KABAT

structure; instead, it amounts to a 'black box recitation of structure'" that is an "attempt to capture all possible means of 'adjusting' 'button setting' information").

The analytical framework required by the Federal Circuit's precedent is not as simple as Microsoft suggests. Rather, as all of the cases cited by Microsoft establish, the determination of means plus function is based on a review of ***all*** of the intrinsic evidence, not just the term "button setting adjusting unit" standing in isolation. *Williamson*, 792 F.3d at 1350-51 (examining the claim language, specification, and file history before determining whether means plus function applied); *Optis*, 139 F.4th at 1382 ("claim language that further defines a generic term may add structure sufficient to avoid invoking § 112 ¶ 6 treatment"); *Team Worldwide Corp. v. Intex Recreation Corp.*, No. 2020-1975, 2021 WL 4130634, at *5 (Fed. Cir. Sept. 9, 2021) ("We begin by reviewing the Board's analysis of the intrinsic record, starting with the claim, then the specification and prosecution history."); *see also* citations in Dkt. 55. Microsoft does not engage in this analysis.

As discussed in TS-Optics' Opening Brief, the intrinsic evidence establishes that the claimed "button setting adjusting unit" is a portion of the software-implemented "virtual controller client." *E.g.*, '709 patent at claim 1 (a "mobile terminal comprising a virtual controller client … comprising … a button setting adjusting unit"), Fig. 1 (button setting adjusting unit 21 is part of the "mobile OS platform 204," operating system being a reference to software); 4:63-67 ("the virtual controller client 20 is executed as a foreground task in the mobile terminal 200," another reference to the client, which the button setting adjusting unit is a part of, is software-based), 9:54-56 ("a user can run the virtual controller on a mobile terminal such as a smartphone," again referring to the virtual controller client as software that can be run). Neither Microsoft nor Dr. Barrett analyze this intrinsic evidence, as evidenced by the fact that they both argue that the claimed "button setting adjusting unit" could include "all possible means" (Dkt. 56 at 4), including "any clearly identifiable hardware component, mechanical linkage, circuitry, or algorithm" (Dkt.

RUSS, AUGUST & KABAT

56-1 at ¶ 90). Microsoft's and Dr. Barrett's argument that the claimed "button setting adjusting unit" could be a "hardware component, mechanical linkage [or] circuitry" is directly contrary to the intrinsic evidence. And Microsoft and Dr. Barrett provide no intrinsic evidence support for their argument.

Having concluded based on the term in isolation that it is merely a "black box," Microsoft concludes that the described algorithm for the claimed "button setting adjusting unit" is nothing more than a recited function. No analysis supports Microsoft's conclusion. However, as discussed in TS-Optics' Opening Brief, particularly when it is acknowledged that the "button setting adjusting unit" is a software component, the balance of the claim is not merely a recited function but is an algorithm that describes how the claimed "button setting adjusting unit" must work to practice the claim. *See also Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1364 (Fed. Cir. 2012) ("disclosure of an algorithm properly defines the scope of the claim and prevents pure functional claiming"; an algorithm can be expressed as "as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure."); *AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1245 (Fed. Cir. 2007) ("algorithms in the specification need only disclose adequate defining structure to render the bounds of the claim understandable to one of ordinary skill in the art.").

When all of the intrinsic evidence is considered, the claimed "button setting adjusting unit" is not simply an alternative to "means for" language. Instead, the limitation provides structure (software and an algorithm for that software), exactly as is required by Federal Circuit precedent to give structure to a software claim. The claim does not cover any and all possible means as argued, without support, by Microsoft. An embodiment in a hardware circuit would not, for example, infringe. Nor would a software implementation that does not use the claimed algorithm by, for example, not providing a mapping relationship between key inputs and virtual input messages. While there may be many ways to create a "button setting adjusting

RUSS, AUGUST & KABAT

unit," only those software-implemented versions that use the claimed algorithm will infringe. The "button setting adjusting unit" term is structure when its complete context is considered.

Microsoft cites to *Williamson* as "instructive." Dkt. 56 at 3-4. But, in *Williamson*, it was admitted that the claimed "module" used a nonce word (not as a reference to a software component like here) and the claimed functions were generic references to "receiving," "relaying," or "coordinating" (not an algorithm for the claimed software, like here). 792 F.3d at 1350-51. Similarly, in *Optis*, the plaintiff emphasized that the claimed "selecting unit" was not limited to any particular form (including between hardware or software) and the claimed function was generic. 139 F.4th at 1382-83. These facts are not present here.

Microsoft also cites to a small portion of Section 2181 of the MPEP in support of its argument. Dkt. 56 at 3. The citation does not support Microsoft's argument because it only sets out that "unit for" "***may*** invoke" means plus function. Ex. 18 at 2 (emphasis added). The MPEP further explains that, consistent with Federal Circuit precedent, in order to determine that means plus function was invoked, the term "must serve as a generic placeholder and thus not limit the scope of the claim to any specific manner or structure for performing the claimed function … in light of the specification and the commonly accepted meaning in the technological art. Every application will turn on its own facts." *Id.* at 3. The MPEP discloses the very analysis Microsoft declines to engage in here. Moreover, according to the MPEP, if the examiner determines that a limitation is in means plus function format, the conclusion "should be expressly stated in the examiner's Office action." *Id.* at 2. Microsoft has identified no such statement for this limitation (or any of the other terms of the '709 patent it asserted are means plus function) in the file history. The examiner must then have concluded that the invention was not claimed in means plus function format despite its use of "unit." The MPEP cite supports TS-Optics' argument, not Microsoft's argument.

RUSS, AUGUST & KABAT

The Court should therefore reject Microsoft's argument because the claimed "button setting adjusting unit" is sufficiently structural, and Microsoft has not met its burden to demonstrate that the term is subject to means plus function.

**2. Client Message Interfacing Unit (Microsoft's Term 3)**

Microsoft effectively repeats its argument with respect to the previous "button setting adjusting unit" here. Dkt. 56 at 7-8. As discussed in TS-Optics' Opening Brief and above, the client message interfacing unit is not simply discussed as a nonce-type placeholder bur rather as a specific structure (software with a specific algorithm). For the same reasons as above, therefore, Microsoft's argument should fail.

**3. Button Setting Generating Unit (Microsoft's Term 7)**

Microsoft repeats the same argument as above for this term, but cites to paragraphs 189-197 of Dr. Barrett's argument. Though claiming to "have reviewed the '709 Patent specification in detail," Dr. Barrett again fails to account for any claim language other than the "button setting generating unit" term. And, while Dr. Barrett includes a reference to the specification in his declaration (the "specification does not disclose any structure—whether hardware, software, algorithm, or otherwise" for claimed the "button setting generating unit" (Dkt. 56-1 at ¶ 191)), he does not explain the basis for his conclusion. As explained above and in TS-Optics' Opening Brief, Dr. Barrett's conclusion is contrary to the disclosure of the specification, which only discloses that the claimed "button setting generating unit" is a software component. Nor does Dr. Barrett explain the contrary intrinsic evidence explained in TS-Optics' Opening Brief and above. Dr. Barrett's conclusory and unsupported opinions do not support Microsoft's argument. The Court should therefore reject Microsoft's proposal to find this term means plus function.

**4. Server Message Interfacing Unit (Microsoft's Term 8)**

Microsoft's argument is the same here as it is with respect to the other "unit" terms. Microsoft again relies on Dr. Barrett's conclusory and unsupported arguments

RUSS, AUGUST & KABAT

that a "server message interfacing unit" could be any structure, regardless of whether it is software or hardware, and regardless of the algorithm it uses. This is not consistent with the intrinsic evidence, and the Court should reject Microsoft's argument.

**5. Key Mapping Unit (Microsoft's Term 9)**

Microsoft's argument for "key mapping unit" is a repeat of its other arguments and relies on the same faulty argument of Dr. Barrett. It should be rejected for the same reason as addressed above, and in TS-Optics' Opening Brief.

**E. Filter And Interface Terms ('709 Patent): Plain And Ordinary Meaning; Not Indefinite**

TS-Optics' Opening Brief establishes why these terms are not subject to means plus function. Despite appearing to refer to structures (filters and a user interface), Microsoft engages in the same type of conclusory analysis it does with the "unit" terms. Dkt. 56 at 10-11. This argument should be rejected for the same reasons.

For the "touch event filter" term (Microsoft's Term 3), Microsoft argues that "filter" could be rewritten as "means," and Microsoft relies on paragraphs 121-122 of Dr. Barrett's opinion. The fact that "filter" could grammatically be rewritten as "means" does not deprive filter of its plain, structural meaning. For example, screwdriver in a "Phillips screwdriver for securing a screw" could also be replaced with means (a "Phillips means") without making the language grammatically improper, but this does not mean a screwdriver is not structural. A "filter" is structure, as discussed in TS-Optics' Opening Brief and Microsoft's cited section of the MPEP (Ex. 18 at 2 (telling patent examiners that "filters" have been found to "have sufficiently definite meaning as the name for the structure that performs the function")). Dr. Barrett's opinion again ignores that the claimed filter is a software-based filter, and instead argues that the claim should have disclosed which type of hardware-based was being claimed. Ex. 56-1 at ¶ 121 ("'filter' can mean many

RUSS, AUGUST & KABAT

things from mechanical to physical, low-pass, band-pass, notch-pass, and many others"; all types of hardware filters implementations irrelevant to the claimed "touch event filter"); Exs. 19-21 (Wikipedia describing the meaning of low-pass filter, high-pass filter, and band-pass filter as hardware filters; a notch filter is a type of band-pass filter). Dr. Barrett's opinion again ignores intrinsic evidence contradicting his conclusion, such as the disclosures of the specification that teach that the filter is software-implemented. *E.g.*, '709 patent at Fig. 1, 5:38-67 (the claimed "touch event filter" is part of "mobile OS platform 204," a reference to software and not hardware).

In paragraph 125, Dr. Barrett appears to acknowledge that the claimed "touch event filter" is software-based, but opines that "no concrete structure" is identified because a filter could be implemented "via conditional logic, gesture recognition algorithms, thresholding routines, or heuristic rules." Microsoft cites no precedent that requires such implemental details to make a claim term structural. Returning to the screwdriver example, Microsoft's argument is akin to arguing that the claimed screwdriver is not structural because it does not indicate the dimensions of the screwdriver or the materials it is made out of. Contrary to Microsoft's argument, the Federal Circuit does not require such details to make a term structural. *See TecSec*, 731 F.3d at 1347 (a term can be structural even it refers to a broad class of potential structures); *Skky*, 859 F.3d at 1019-20 (similar).

Microsoft's argument for the "acceleration data filter" term (Microsoft's Term 5) is similarly conclusory, citing to paragraphs 169-182 of Dr. Barrett's argument and concluding the term lacks structure. Dkt. 56 at 13-14. Dr. Barrett's opinions regarding the "acceleration data filter" term are similar to the "touch event filter," again concluding with explanation that the claimed filter could be any hardware or software implementation of a filter and referring to hardware filter concepts like "low-pass" and "band-pass." Dr. Barrett also has a lengthy description of linear accelerations and rotational accelerations that "would require distinct algorithms or

RUSS, AUGUST & KABAT

hardware structures." Dkt. 56-1 at ¶ 173; *see also id.* at ¶ 181 (Dr. Barrett arguing that this claim limitation is about "transforming sensor data into key input commands"). But this opinion further demonstrates that Dr. Barrett's opinion is not consistent with the intrinsic evidence. In the specification, an "acceleration data generating unit 25" processes acceleration signals "so as to be valid acceleration data." '709 patent at 4-9. This processing of acceleration data to find the valid data appears to be what Dr. Barrett is discussing in his declaration, but the "acceleration data generating unit 25" is not claimed in claim 2, and it is not relevant here. Here, the claimed "acceleration data filter" filters already-processed acceleration data.

Microsoft's arguments for "user virtual button interface" is conclusory. Dkt. 56 at 12 (simply declaring that this term "is an MPF term," citing *Williamson*). Because the term is presumed to not be means plus function, Microsoft's unsupported conclusion to the contrary is not sufficient. Additionally, TS-Optics' Opening Brief explains how a "user interface" is structural. Dkt. 55 at 23. To the extent Microsoft provides argument attempting to meet its burden in its response brief, the argument should be struck as untimely.

The Court should therefore adopt TS-Optics' proposed constructions for the filter and user interface terms.

## III. CONCLUSION

Microsoft has not met its burden to show that "unipolar magnets" or the terms of the '709 patent are indefinite. Microsoft's arguments regarding "unipolar magnets" are directly contrary to its own admissions (and the opinion of a previous expert). Microsoft's arguments regarding the '709 patents also depend on ignoring contrary evidence about the plain meaning of the intrinsic evidence. When all of the intrinsic evidence is considered, the Court should adopt TS-Optics' proposed constructions.

RUSS, AUGUST & KABAT

DATED: September 25, 2025

Respectfully submitted,

*/s/ Benjamin T. Wang*

Benjamin T. Wang (CA SBN 228712)
bwang@raklaw.com
Andrew D. Weiss (CA SBN 232974)
aweiss@raklaw.com
Neil A. Rubin (CA 250761)
nrubin@raklaw.com
Christian W. Conkle (CA SBN 306374)
cconkle@raklaw.com
Daniel B. Kolko (CA SBN 341680)
dkolko@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

***Attorneys for Plaintiff***
***TS-Optics Corporation***

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2025, I electronically filed the foregoing document with the Clerk of the Court for the Central District of California using the ECF System which will send notification to the registered participants of the ECF System as listed on the Court's Notice of Electronic Filing.

/s/ *Benjamin T. Wang*
Benjamin T. Wang