MORGAN, LEWIS & BOCKIUS LLP
Andrew V. Devkar, CA SBN 228809
andrew.devkar@morganlewis.com
2049 Century Park East
Suite 700
Los Angeles, CA 90067-3109
Tel:    +1.310.907.1000
Fax:    +1.310.907.2000

Natalie A. Bennett (*pro hac vice*)
natalie.bennett@morganlewis.com
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Tel: +1.212.739.3000
Fax: +1.212.739.3001

*Attorneys for Defendant Microsoft Corporation*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| TS-OPTICS CORPORATION, | Case No. 8:24-cv-01974-DOC-DFM |
|---|---|
| Plaintiff, | **DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF** |
| vs. | **JURY TRIAL DEMANDED** |
| MICROSOFT CORPORATION, | |
| Defendant. | |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 8:24-CV-01974-DOC-DFM
DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

1

# TABLE OF CONTENTS

2

Page

3    I.    INTRODUCTION ............................................................................................................. 1

4    II.    DISPUTED TERMS FOR CONSTRUCTION ................................................................. 2

5         A.    The Disputed Terms of the '709 Patent ............................................................. 2

              1.    Term 1: "button setting adjusting unit" (claim 1) ...................................... 2

6             2.    Term 2: "client message interfacing unit" (claims 1 & 2) .......................... 8

7             3.    Term 3: "touch event filter" (claim 1) ....................................................... 10

              4.    Term 4: "user virtual button interface" (claim 1 and 2)............................ 12

8             5.    Term 5: "acceleration data filter" (claim 2) .............................................. 13

9             6.    Term 6: "virtual controller server" (claims 1, 2, 4, 8).............................. 14

10            7.    Term 7: "button setting generating unit" (claim 4).................................... 17

              8.    Term 8: "server message interfacing unit" (claims 4 and 5)..................... 19

11            9.    Term 9: "key mapping unit" (claims 4, 6, 7) ............................................ 20

12            10.    Term 10: "virtual controller client" (claims 1, 2, 3, 4) ............................ 21

13        B.    The Disputed Terms of the '055 Patent ............................................................ 23

              1.    Term 1: "facing each other" (claim 1) ....................................................... 23

14            2.    Term 2: "unipolar magnets" (claim 40) ..................................................... 23

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

i

DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**CASES**

5

6

*Altiris, Inc. v. Symantec Corp.*,
    318 F.3d 1363 (Fed. Cir. 2003).............................................................................................. 15

7

*Apex Inc. v. Raritan Comput., Inc.*,
    325 F.3d 1364 (Fed. Cir. 2003)................................................................................................ 7

8

9

*Apple Inc. v. Motorola, Inc.*,
    757 F.3d 1286 (Fed. Cir. 2014)................................................................................................ 7

10

11

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*,
    521 F.3d 1328 (Fed. Cir. 2008).......................................................................................... passim

12

*B. Braun Med., Inc. v. Abbott Labs.*,
    124 F.3d 1419 (Fed. Cir. 1997)................................................................................................ 5

13

14

*Cellwitch Inc. v. Tile, Inc.*,
    No. 19-CV-01315, 2024 WL 1772835 (N.D. Cal. Apr. 23, 2024) ......................................... 15

15

16

*Chef America v. Lamb-Weston*,
    358 F.3d 1371 (Fed. Cir. 2004)........................................................................................... 2, 23

17

*Creo Prods., Inc. v. Presstek, Inc.*,
    305 F.3d 1337 (Fed. Cir. 2002).............................................................................................. 20

18

19

*Dyfan, LLC v. Target Corp.*,
    28 F.4th 1360 (Fed. Cir. 2022)................................................................................................. 7

20

21

*Free Stream Media Corp. v. Alphonso Inc.*,
    No. 2:15-CV-1725, 2017 WL 1165578 (E.D. Tex. Mar. 29, 2017) ....................................... 17

22

*Generation II Orthotics Inc. v. Med. Tech. Inc.*,
    263 F.3d 1356 (Fed. Cir. 2001).............................................................................................. 24

23

24

*Hybrid Audio, LLC v. Asus Comput. Int'l Inc.*,
    No. 3:17-CV-05947-JD, 2022 WL 3348594 (N.D. Cal. Aug. 12, 2022)............................ 4, 11

25

*Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*,
    732 F.3d 1376 (Fed. Cir. 2013)................................................................................................ 5

26

27

*Inventio AG v. ThyssenKrupp Elevator Americas Corp.*,
    649 F.3d 1350 (Fed. Cir. 2011)................................................................................................ 7

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

ii

DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Invitrogen Corp. v. Clontech Lab'ys, Inc.*,
   429 F.3d 1052 (Fed. Cir. 2005) ........................................................................... 16

*Linear Tech. Corp. v. Impala Linear Corp.*,
   79 F.3d 1311 (Fed. Cir. 2004) ........................................................................ 7, 16

*Lockheed Martin Corp. v. Space Systems/Loral, Inc.*,
   324 F.3d 1308 (Fed. Cir. 2003) ........................................................................... 19

*Maxell Ltd. v. Apple Inc.*,
   No. 5:19-CV-00036, 2020 WL 10456875 (E.D. Tex. Mar. 18, 2020) ................. 17

*Media Rights Techs. Inc. v. Cap. One Fin. Corp.*,
   800 F.3d 1366 (Fed. Cir. 2015) ........................................................................... 11

*Nautilus v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014) ............................................................................................. 25

*Noah Sys., Inc. v. Intuit Inc.*,
   675 F.3d 1302 (Fed. Cir. 2012) ...................................................................... passim

*Optis Cellular Tech., LLC v. Apple Inc.*,
   139 F.4th 1363 (Fed. Cir. 2025) .......................................................................... 22

*Parity Networks, LLC v. Edgecore USA Corp.*,
   No. 20-cv-697, 2020 WL 8569299 (C.D. Cal. Dec. 22, 2020) ....................... passim

*Pfizer, Inc. v. Ranbaxy Lab'ys Ltd.*,
   457 F.3d 1284 (Fed. Cir. 2006) ........................................................................... 23

*Process Control Corp. v. HydReclaim Corp.*,
   190 F.3d 1350 (Fed. Cir. 1999) ........................................................................... 24

*Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*,
   948 F.3d 1342 (Fed. Cir. 2020) ........................................................................... 24

*Sisvel Int'l S.A. v. Sierra Wireless, Inc.*,
   82 F.4th 1355 (Fed. Cir. 2023) ..................................................................... passim

*Skky, Inc. v. MindGeek, s.a.r.l.*,
   859 F.3d 1014 (Fed. Cir. 2017) ........................................................................... 16

*Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*,
   753 F.3d 1291 (Fed. Cir. 2014) ........................................................................... 23

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

iii

DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Synchronoss Techs., Inc. v. Dropbox, Inc.*,
    987 F.3d 1358 (Fed. Cir. 2021)..........................................................................................5, 23

*Tech. & Elecs. For Imaging, Inc. v. Abacus Software*,
    462 F.3d 1344 (Fed. Cir. 2006)...............................................................................................7

*TecSec, Inc. v. International Bus. Machs. Corp.*,
    731 F.3d 1336 (Fed. Cir. 2013).............................................................................................16

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015).......................................................................................passim

*WSOU Invs. LLC v. Google LLC*,
    No. 2022-1063, 2023 WL 6889033 (Fed. Cir. Oct. 19, 2023)..................................................7

**STATUTES**

35 U.S.C. § 112.......................................................................................................................23

35 U.S.C. § 112(f)..............................................................................................................passim

35 U.S.C. § 112 ¶ 6...................................................................................................5, 6, 7, 19

**OTHER AUTHORITIES**

Manual of Patent Examining Procedure ..................................................................................passim

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

iv

DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

# I.    INTRODUCTION

For the '709 Patent terms, Plaintiff does not meaningfully analyze the *Williamson* standard. Plaintiff sidesteps §112(f) by asserting "plain and ordinary meaning" for limitations that are purely functional. There would be no debate that §112(f) applies if these terms had used the words "means for" instead of "unit configured to." Instead of "means for," the claims use language that has been specifically identified as substitute placeholder language for application of §112(f). For example, the generic placeholder "unit" is precisely the type of "nonce" word that *Williamson* describes, and indeed the Manual of Patent Examining Procedure ("MPEP") identifies "unit for" among its exemplary "list of non-structural generic placeholders that may invoke 35 U.S.C. 112(f)." MPEP §2181. Likewise, the MPEP identifies "configured to"—the verbatim transitional words used in the limitations at issue—as typical transition words used in limitations giving rise to §112(f). *Id*. It is difficult to find clearer examples of means-plus-function limitations under the *Williamson* standard than those at issue here.

Moreover, Plaintiff identifies no algorithm, code, hardware, or other structural disclosure in the specification for performing the recited functions—because none exists. Plaintiff's attempt to identify algorithms for the "unit" terms is to reformat the language of the recited functions themselves. This is plainly deficient, and neither the recited functions nor the specification includes any algorithm for performing the recited functions. Tellingly, although Plaintiff submits an expert rebuttal declaration for claim construction, the declaration provides no opinion at all for the '709 Patent—no evidence that a person of ordinary skill in the art ("POSITA") would have (1) understood these terms to connote any structure or (2) found any structure in the specification for performing the recited functions. It would not be surprising if Plaintiff was unable to find an expert willing to advance such positions. In the absence of such testimony, Plaintiff's arguments rest on attorney argument and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

speculation that falls flat in the face of Microsoft's detailed expert opinion providing a skilled artisan's analysis of these indefinite claim limitations.

Plaintiff's treatment of the sole disputed term in the '055 patent—"unipolar magnets"—is an attempt to redraft the claim. Magnets, by definition, have two poles. Plaintiff attempts to rescue its claim from indefiniteness by rewriting the claim to replace "unipolar magnets" with something that has defined scope. Although Microsoft submitted in its IPR petition a meaning for what the patentee may have intended to recite in place of this term, that is only because indefiniteness is not available to challenge in an IPR. IPR petitioners regularly reserve their indefiniteness challenges for district court despite challenging the same claims on grounds permitted in an IPR. This claim construction proceeding is the appropriate place to assert indefiniteness. The term, as drafted, is nonsensical. That the parties or the Court might be able to guess at what the patentee intended to claim is of no moment. The Federal Circuit has established that courts may not "rewrite claims to preserve validity" even where one could guess at what the patentee intended and the claim as drafted is nonsensical and "could not perform the function the patentees intended." *See Chef Am. v. Lamb-Weston*, 358 F.3d 1371, 1374-75 (Fed. Cir. 2004).

## II.   DISPUTED TERMS FOR CONSTRUCTION

### A.   The Disputed Terms of the '709 Patent

#### 1.   Term 1: "button setting adjusting unit" (claim 1)

| Microsoft's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| Means plus function:<br><br>Function: "configured to receive first button setting information … and to specify an arrangement and attributes of virtual buttons based on the received first button setting information … [and] configured to receive second button setting information."<br><br>Structure: No corresponding structure disclosed. Therefore, the limitation is indefinite. | Plain and ordinary meaning. |

As explained in Microsoft's Opening Brief (Dkt. 56 at 1-4), the rebuttable presumption that §112(f) does not apply is overcome because the "term fails to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

'recite[] sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015). The important impact of the *Williamson* decision was that the presumption against §112(f) for limitations lacking the words "means for" was no longer a strong presumption (which the Federal Circuit determined was "unwarranted"), and that the presumption should be overcome whenever a claim recites function without reciting sufficient structure for performing that function. *Id. at* 1349. Plaintiff sidesteps this analysis.

In view of the *Williamson* standard established by the Federal Circuit, the MPEP includes the following regarding when §112(f) should apply:

(A) the claim limitation uses the term "means" or "step" *or a term used as a substitute for "means" that is a generic placeholder (also called a nonce term or a non-structural term having no specific structural meaning)* for performing the claimed function;

(B) the term "means" or "step" or the *generic placeholder is modified by functional language*, typically, but not always linked by the transition word "for" (e.g., "means for") or *another linking word or phrase, such as "configured to"* or "so that"; and

(C) the term "means" or "step" or *the generic placeholder is not modified by sufficient structure, material, or acts for performing the claimed function*.

MPEP §2181 (emphasis added). The MPEP further identifies the words "*unit for*" in its exemplary "list of *non-structural generic placeholders* that may invoke 35 U.S.C. 112(f)." *Id*. (emphasis added).

The "unit" terms at issue[1] here are of the form "unit configured to..." and therefore align perfectly with the above test, using a placeholder and linking words that are specifically identified by the MPEP as exemplary for invoking §112(f).

---

[1] The "unit" terms include "button setting adjusting unit," "client message interfacing unit," "button setting generating unit," "server message interfacing unit," and "key mapping unit."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

The recited function of the "button setting adjusting unit" is [1] receiving first button setting information including a mapping relationship between key inputs to the application and associated virtual input messages, [2] specifying an arrangement and attributes of virtual buttons based on the received first button setting information, and [3] receiving second button setting information including the dynamically changed virtual message associated with the given key input. *See* Dkt. 56 at 4-5; '709 patent, claim 1. All of this language is entirely functional and devoid of any structure/algorithm as to "how" the function is to be performed. Plaintiff argues that this term, and all the other "unit" terms, should be given their "plain and ordinary meaning" and that they "disclose algorithms such that they are sufficiently structural." Dkt. 55 at 13-16. These positions are wholly unsupported.

*First*, Plaintiff argues that Term 1 (and all terms at issue in this proceeding) should maintain its "plain and ordinary meaning." Where a term invokes §112(f), a construction of "plain and ordinary meaning" is clearly inappropriate.[2]

*Second*, Plaintiff incorrectly argues that the "unit" terms, including Term 1, "disclose algorithms such that they are sufficiently structural." Dkt. 55 at 16. According to Plaintiff, the "button setting adjusting unit' is a "software" and claim 1 itself includes a purported "algorithm" that Plaintiff concocts by reformatting and regurgitating the recited function of the limitation itself, as follows:

> (1) receiving first button setting information; (2) the first button setting information including a mapping relationship between key inputs and associated virtual input messages; (3) specifying an arrangement and attributes of virtual buttons based on the received first button setting information; (4) receiving second button setting information; and (5) the second button setting information including a dynamically redefined

---

[2] More generally, constructions of "plain and ordinary meaning" are inappropriate when parties have genuine disputes regarding the construction of a term. *See, e.g.*, *Hybrid Audio, LLC v. Asus Comput. Int'l Inc.*, No. 3:17-CV-05947-JD, 2022 WL 3348594, at *3 (N.D. Cal. Aug. 12, 2022) (explaining that it "is a bizarre and totally unhelpful approach to claim construction" to ask that "terms be given their plain and ordinary meaning, without saying what that might be" and to "say[] that none of these terms require construction by the Court").

DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

1
2

mapping relationship where the virtual associated with a given key input has changed.

3

*Id.* at 19.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Plaintiff's argument must fail. Everything included in its purported "algorithm" is purely functional and comprises the recited function itself. None of this functional language is an algorithm and none of it provides any specifics or suggestion as to "how" this function should be performed or implemented. *See Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech*., 521 F.3d 1328, 1334 (Fed. Cir. 2008) (rejecting the argument that the function identified in the claim language constitutes an "algorithm": "But that language [the purported "algorithm"] simply describes the function to be performed, not the algorithm by which it is performed."). Nor would it matter if a POSITA "would have been able to write such a software program"—the test is whether a POSTA would "recognize the patent as disclosing any algorithm at all." Id. at 1337-38. Here, a POSITA would not identify any algorithm because none is disclosed. Dkt. 56-1 at ¶¶ 84-97. The *quid pro quo* for reciting a purely functional claim limitation is that the specification must elsewhere disclose the specific structure or algorithm that is claimed for performing that function. *See B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997) ("This duty to link or associate structure [in the specification] to function [recited in the claim] is the *quid pro quo* for the convenience of employing § 112, ¶ 6."). Otherwise, a patentee could be granted coverage for all means under the sun for performing its purely functional recitation. *Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1367 (Fed. Cir. 2021) ("It is not enough that a means-plus-function claim term correspond to every known way of achieving the claimed function; instead, the term must correspond to 'adequate' structure in the specification that a [POSITA] would be able to recognize and associate with the corresponding function in the claim.").

28

Here, there is no structure or algorithm anywhere in the specification for

"button setting adjusting unit," and Plaintiff identifies none.  *See Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*, 732 F.3d 1376, 1379 (Fed. Cir. 2013) ("Ibormeith recognizes that the structure required for 'computational means' in claims 1 and 9 must be an algorithm—a sequence of computational steps to follow—that must be found in the specification.").  As the Federal Circuit has explained, "[s]imply disclosing software…'without providing some detail about the means to accomplish the function[,] is not enough.'"  *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012) (citation omitted).

Plaintiff's regurgitation of the function itself is plainly deficient.  *See, e.g., Aristocrat*, 521 F.3d at 1338 ("Aristocrat was not required to produce a listing of source code or a highly detailed description of the algorithm to be used to achieve the claimed functions in order to satisfy 35 U.S.C. § 112 ¶ 6. It was required, however, to at least disclose the algorithm that transforms the general purpose microprocessor to a 'special purpose computer programmed to perform the disclosed algorithm.'"); *Parity Networks, LLC v. Edgecore USA Corp*., No. 20-cv-697, 2020 WL 8569299, at *11 (C.D. Cal. Dec. 22, 2020) (determining that specification's statement about "(a) receiving data packets at the data port, (b) determining those packets to be sent to the CPU for processing, (c) sorting the CPU-destined packets into two or more queues by category" did "not describe how the packet processor 'categorizes' incoming packets" and "[w]ithout an algorithm that describes how the packet processor categorizes and then forwards packets, the Court cannot find there to be adequate corresponding structure").

Despite Plaintiff submitting an expert declaration for claim construction, Plaintiff does not provide any expert opinion whatsoever relating to the '709 Patent terms.  Perhaps Plaintiff was not able to find an expert willing to support Plaintiff's incorrect positions for the '709 Patent.  In any case, Plaintiff does not provide any evidence of "the skilled artisan's perspective." *Sisvel Int'l S.A. v. Sierra Wireless, Inc*., 82 F.4th 1355, 1368 (Fed. Cir. 2023) (evaluating sufficiency of disclosed

1   structure requires considering what a skilled artisan would understand from the

2   specification, and expert testimony may be used for that purpose) (citation omitted).

3   Plaintiff's argument rests entirely on attorney argument that carries no weight about

4   how a POSITA would interpret the term or its lack of structure.

5        In contrast, Microsoft provides detailed expert testimony from POSITA.  Dr.

6   Barrett confirms in a thorough analysis that (1) "button setting adjusting unit" is not

7   a term of art; (2) the recited function for the term is purely functional and a POSITA

8   recognizes no structure or algorithm in the claim term; (3) the specification provides

9   no structure or algorithm explaining "how" any of the recited function is performed;

10  (4) the specification provides only functional language that adds nothing beyond the

11  functional language already present in the claim; and (5) the term is therefore

12  indefinite to a POSITA.  Dkt. 56-1 at ¶¶ 84-97.

13       Plaintiff's case law citations are inapplicable.  For example, *Inventio AG v.*

14  *ThyssenKrupp Elevator Americas Corp.*, 649 F.3d 1350 (Fed. Cir. 2011) and *Apple*

15  *Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014), each applied the **pre-**

16  **Williamson** "strong" presumption against § 112(f) for claims that lack the word

17  "means."   As discussed *supra*, *Williamson* eliminated this strong presumption,

18  significantly changing the landscape and breadth of claim terms that invoke §112(f).

19  *See Williamson*, 792 F.3d at 1349.  And *Linear Technology Corporation v. Impala*

20  *Linear Corporation* (cited by Plaintiff at pp. 12, 18) addressed the term "circuit,"

21  which—unlike "unit"—is commonly defined as connoting structure such as

22  "electrical devices and conductors."   379 F.3d 1311, 1320 (Fed. Cir. 2004).

23       Likewise, the cases that Plaintiff cites as purportedly "demonstrat[ing] that the

24  'unit' terms are not [MPF]" are inapplicable.  *See* Dkt. 55 at 19.  As Plaintiff's own

25  parentheticals reveal (*id.*), none of *Dyfan, LLC v. Target Corp.*, 28 F.4th 1360 (Fed.

26  Cir. 2022), *Tech. & Electronics For Imaging, Inc. v. Abacus Software*, 462 F.3d 1344

27  (Fed. Cir. 2006), or *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364 (Fed. Cir.

28  2003), address a "unit" term or comparable claim limitation.  Nor does Plaintiff

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

compare the complete claim limitation at issue in those cases to the limitation here. *See, e.g.*, *WSOU Invs. LLC v. Google LLC*, No. 2022-1063, 2023 WL 6889033, at *3 (Fed. Cir. Oct. 19, 2023) (explaining that "the applicability of § 112 ¶ 6 depends on the specific context of the patent at issue"); *Williamson*, 792 F.3d at 1350 (analyzing complete passage in claim limitation instead of merely the "introductory phrase" to determine if MPF term).

For all of the above reasons, Term 1 is governed by § 112(f) and indefinite.

### 2. Term 2: "client message interfacing unit" (claims 1 & 2)

| Microsoft's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| Means plus function: <br><br> <u>Function</u>: "configured to convert the touch input message into a virtual input message in a form recognized by the virtual controller server, and to output, to the virtual controller server, the converted touch input message as the virtual input message." In claim 2, the recited function also includes "to convert the touch input message or the movement input message into a virtual input message in a form recognized by the virtual controller server." <br><br> <u>Structure</u>: No corresponding structure disclosed. Therefore, the limitation is indefinite. | Plain and ordinary meaning |

Plaintiff does not provide any separate argument or analysis for Term 2. Plaintiff summarily groups these five "unit" terms[3] together and argues for all that (i) each should be construed to have its "plain and ordinary meaning"; and (ii) if the term is construed as an MPF term, then the functional language in the claim is purportedly an "algorithm" providing structure. *See* Dkt. 55 at 13-16, 19-21. Plaintiff's arguments for Term 2 are incorrect for the same reasons discussed above in connection with Term 1.[4]

The only different argument from Plaintiff for Term 2 is what it contends is

---

[3] The "unit" terms include "button setting adjusting unit," "client message interfacing unit," "button setting generating unit," "server message interfacing unit," and "key mapping unit."

[4] Because Plaintiff provides the same analysis for all "unit" terms at issue, treatment for this and the remaining terms will be progressively abbreviated.

the so-called "algorithm." *Id.* at 19. As with the other "unit terms," Plaintiff argues that the purported "algorithm" is a reformatted version of the recited functional language of the term itself:

> *For claim 1*:
>
> (1) converting the touch input message into a virtual input message in a form recognized by the virtual controller server; and
>
> (2) outputting, to the virtual controller server, the converted touch input message as the virtual input message."
>
> *For claim 2*:
>
> (1) converting the touch input message or movement input message into a virtual input message in a form recognized by the virtual controller server; and
>
> (2) outputting, to the virtual controller server, the converted as the virtual input message.

Dkt. 55 at 19-20 (italics in original).

The above is purely functional language constituting the recited function. It is not in any way an "algorithm," let alone an algorithm that serves as the sufficiently definite structure as to how this overly broad functional language is performed. *See, e.g.*, *Noah*, 675 F.3d at 1312; *Aristocrat*, 521 F.3d at 1338; *Parity*, 2020 WL 8569299, at *11.

Plaintiff offers no expert support for how a POSITA would interpret this term. Microsoft's expert, Dr. Barrett, explains in detail that a "client message interfacing unit" is not a term of art, that the entire claim limitation is purely functional, and that neither the term, its recited function, or any portion of the specification provides any algorithm or structure for performing the recited function. Dkt. 56-1 at ¶¶134-149. Dr. Barrett confirms that the term is of indefinite scope to a POSITA. *Id*. at ¶ 149.

Therefore, Term 2 is indefinite. Dkt. 56 at 7-9.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

### 3. Term 3: "touch event filter" (claim 1)

| Microsoft's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| Means plus function:<br><br><u>Function</u>: "configured to generate touch input messages recognized as key input by the application, based on touch event objects that are generated from touch signals, of the touch regions corresponding to the virtual buttons, among touch signals input by the touch screen."<br><br><u>Structure</u>: No corresponding structure disclosed. Therefore, the limitation is indefinite. | Plain and ordinary meaning |

In its Opening Brief (Dkt. 56 at 10-11), Microsoft explained that § 112(f) applies to Term 3 despite not using the word "means" because the term "fails to 'recite[] sufficiently definite structure' or else recites 'function without reciting sufficient structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Williamson*, 792 F.3d at 1348.

Dr. Barrett explains that "touch event filter" is not a term of art and has no structural meaning. Dkt. 56-1 at ¶ 122. He further explains that "filter" is used as a functional placeholder, much like the word "means." *Id.* at 123. Like the other terms at issue, "touch event filter" is followed by the linking words "configured to" that are specifically identified by the MPEP as exemplary for invoking §112(f). MPEP, §2181; *see* discussion at Term 1.

The recited function of the "touch event filter" is "[configured to] generate touch input messages recognized as key input by the application, based on touch event objects that are generated from touch signals, of the touch regions corresponding to the virtual buttons, among touch signals input by the touch screen." Dkt. 56 at 11. There is insufficient structure that corresponds to the claimed function and, as such, the claim is indefinite. *Id.* at 10-11.

Plaintiff groups the two "filter" terms and one "interface" term together[5], arguing that the terms should retain their plain and ordinary meaning and that § 112(f)

---

[5] "Touch event filter," "user virtual button interface," and acceleration data filter."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

10

DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

1  does not apply.  Plaintiff misses the mark.

2  *First*, as with the preceding terms, where a term invokes §112(f), a

3  construction of "plain and ordinary meaning" is inappropriate. Plaintiff offers a

4  construction of "plain and ordinary meaning" without explaining what that meaning

5  is. *See, e.g.*, *Hybrid*, 2022 WL 3348594, at \*3.

6  *Second*, Plaintiff again cites the functional language from the claim as

7  purportedly disclosing an "algorithm." Dkt. 55 at 24-25. As explained in Section

8  II.A.1 above, the recited functions of the "touch event filter" do not constitute a

9  structural "algorithm." *See, e.g.*, *Noah*, 675 F.3d at 1312; *Aristocrat*, 521 F.3d at

10  1338; *Parity*, 2020 WL 8569299, at \*11. Indeed, Plaintiff provides no expert

11  testimony to suggest that a POSITA would find any algorithm or other structure in

12  the specification. *See Sisvel*, 82 F.4th at 1368. As Microsoft and its expert have

13  explained, there is an absence of any such structure in the claim and specification.

14  Dkt. 56-1 at ¶ 118-133.

15  *Finally*, although Plaintiff points to the dictionary definition of "filter," it fails

16  to explain how that definition reflects definite structure. Dkt. 55 at 23-24. If

17  anything, the definition confirms that a "filter" refers to a function, not a structure.

18  *Id.* ("filter" is defined as a "***program or software function*** that removes or hide

19  certain [information], according to preset rules or conditions" (emphasis added)).

20  Indeed, software is not inherently structural. *E.g.*, *Williamson*, 792 F.3d at 1350

21  (term "distributed learning control model" was generic description for software that

22  performed specific functions, requiring the specification to disclose an algorithm for

23  performing the claimed functions); *Media Rights Techs. Inc. v. Cap. One Fin. Corp.*,

24  800 F.3d 1366, 1374 (Fed. Cir. 2015) ("Because these functions are computer-

25  implemented functions, moreover, the structure disclosed in the specification must

26  be more than a general purpose computer or microprocessor. Instead, we require that

27  the specification disclose an algorithm for performing the claimed function.")

28  (citations omitted).

11                              DEFENDANT'S RESPONSIVE CLAIM
                              CONSTRUCTION BRIEF

Thus, "touch event filter" is governed by § 112(f) and indefinite.

### 4. Term 4: "user virtual button interface" (claim 1 and 2)

| Microsoft's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| Means plus function: | Plain and ordinary meaning. |
| <u>Function</u>: "configured to generate a first virtual button screen based on the first button setting information … and to display the first virtual button screen on a touch screen display device of the mobile terminal … [and] in response to an occurrence of the event in the application, … configured to generate and display, on the touch screen display device of the mobile terminal, a second virtual button screen based on the second button information." | |
| In claim 2 the recited function also includes "activat[ing] an acceleration sensor of the mobile terminal to enable a detection of movements of the mobile terminal." | |
| <u>Structure</u>: No corresponding structure disclosed. Therefore, the limitation is indefinite. | |

Plaintiff's Opening Brief does nothing to undermine Microsoft's showing that the term "user virtual button interface" recites "function without reciting sufficient structure for performing that function."  In its Opening Brief, Microsoft provided unrebutted expert opinion that the term "interface" is a generic term that does not convey structure to a POSITA, let alone specific structure sufficient to perform the lengthy recited function.  Dkt. 56-1 at ¶¶ 104-05; *see id.* at ¶¶ 106-07.

Plaintiff states in a conclusory manner that "a POSITA (and most people today) would understand that the claimed user interface is referring to virtual buttons displayed on a touch-sensitive screen, like most mobile phones and tablets today." Dkt. 55 at 23.  Plaintiff offers no declaration of a POSITA to support this assertion. Microsoft did submit the declaration of a POSITA, as explained by Microsoft's expert, the term "user virtual button interface" is not a term of art, has no established structural meaning, and does not refer to a particular class of known structures or component.  Dkt. 56-1 at ¶ 102.  For example, Figure 1 merely lists the "user virtual button interface 22" as one of several unnamed components within the virtual

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

controller client 20. *Id.* at ¶ 113. That figure does not depict any internal structure, circuitry, or data flows that would inform a POSITA how to perform the required functions. *Id.* Plaintiff cannot credibly contend that "virtual buttons displayed on a touch-sensitive screen, like most mobile phones and tablets today" would be structure sufficient to perform the functions of (1) generating a first virtual button screen based on the first button setting information; (2) displaying that first virtual button screen on a touch screen display of a mobile terminal; (3) generating and displaying a second virtual button screen based on second button information, in response to an event; and (4) activating an acceleration sensor of the mobile terminal to enable detection of movement. *Id.* at ¶ 108.

Plaintiff also argues that "[e]ven if the terms themselves are not sufficiently structural, like the 'unit' terms, each of the terms is talking about a portion of a software programs whose algorithm is defined within the claim limitation itself." Dkt. 55 at 24; *see also id.* at 24-25 (citing functional language in claim as alleged "algorithm" in summary table). This is incorrect. As described *supra* at Section II.A.1., functional language "within the claim limitation itself" does not constitute the structural algorithm. *See, e.g.*, *Noah*, 675 F.3d at 1312; *Aristocrat*, 521 F.3d at 1338; *Parity*, 2020 WL 8569299, at *11.

Thus, the term "touch event filter" is governed by § 112(f) and indefinite.

### 5. Term 5: "acceleration data filter" (claim 2)

| Microsoft's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| Means plus function: | Plain and ordinary meaning |
| <u>Function</u>: "configured to generate a movement input message that is mapped to a key input of the application, based on acceleration data that is generated based on an acceleration signal generated by the acceleration sensor." | |
| <u>Structure</u>: No corresponding structure disclosed. Therefore, the limitation is indefinite. | |

Grouping "acceleration data filter" (Term 5) with "user virtual button interface" (Term 4), and "virtual controller client" (Term 10), Dkt. 55 at 21-25,

DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

Plaintiff argues that "filter" alone connotes sufficiently definite structure because "Microsoft's own dictionary citation defines 'filer' [sic] as a 'program or software function that removes or hides certain [information], according to preset rules or conditions,' and further notes it is "[f]requently with distinguishing word[s]" such as 'parental' or "spam.'" *Id.* at 23-24. This confirms that "filter" alone does <u>not</u> connote sufficient structure and is, instead, functional in nature—i.e., "program or software *function*… .""

As explained in Microsoft's Opening Brief, nothing in the '709 Patent provides structure for performing the recited function of "generat[ing] a movement input message that is mapped to a key input of the application, based on acceleration data that is generated based on an acceleration signal generated by the acceleration sensor." Dkt. 56 at 13-14. Rather, any mention of the term in the patent provides no description at all or merely restates its function. *Id.* at 14. And although Figure 1's "conceptual diagram" contains a box for "acceleration data filter 26," Dkt. 56-2 at 4:30-33, Fig. 1, it does not reveal its structure, Dkt. 56 at 14.

Plaintiff's remaining argument regarding the algorithm is wrong for the same reasons as set forth for the other MPF terms. There is no "algorithm…defined within the claim limitation itself," as Plaintiff contends, Dkt. 55 at 24, and the functional language in the claim does not constitute an algorithm for purposes of the structure analysis. *See, e.g.*, *Noah*, 675 F.3d at 1312; *Aristocrat*, 521 F.3d at 1338; *Parity*, 2020 WL 8569299, at *11.

Plaintiff offers no support from a POSITA for its attorney argument. In contrast, Microsoft provides a detailed expert analysis as to why a POSITA finds this functional term to be indefinite. Dkt. 56-1 at ¶¶ 169-185.

Term 5 is governed by § 112(f) and indefinite.

### 6.    Term 6: "virtual controller server" (claims 1, 2, 4, 8)

| Microsoft's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| Means plus function: | Plain and ordinary meaning |

| Microsoft's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| Function: "configured to remotely communicate with a virtual controller client running on a remote mobile terminal" | |
| Structure: No corresponding structure disclosed. Therefore, the limitation is indefinite. | |

Although Term 6 does not use the word "means," the phrase "virtual controller server configured to" recites only functional language without any structure. Dkt. 56 at 15-17. Therefore, the rebuttable presumption that § 112(f) does not apply to Term 6 is overcome because the "term fails to 'recite[] sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Williamson*, 792 F.3d at 1348. Under the first step of the § 112(f) analysis, the function of the "virtual controller server" is "remotely communicat[ing] with a virtual controller client running on a remote mobile terminal." Dkt. 56 at 14-17. Under the second step, there is insufficient structure that corresponds to the claimed function and, as such, the claim is indefinite. *Id.*

Plaintiff's arguments miss the mark. ***First***, Plaintiff proposes that Term 6 has its "plain and ordinary meaning" and, despite not disclosing it prior to briefing, contends that this meaning is a "software program[] in a client/server architecture that provide a certain functionality (a virtual controller)." Dkt. 55 at 7-8. In Plaintiff's view, "the server and client are described in their well-known structural sense as software programs in a server-client relationship being executed by computer hardware." *Id.* at 8. However, a "software program" is "so broad as to give little indication of the particular structure used here and is described only functionally." *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1376 (Fed. Cir. 2003).

***Second***, Plaintiff offers only attorney argument instead of providing evidence that a POSITA would understand use of the term "server" to be structural. Dkt. 55 at 8-13. That is insufficient. *See, e.g.*, *Cellwitch Inc. v. Tile, Inc.*, No. 19-CV-01315, 2024 WL 1772835, at *13 (N.D. Cal. Apr. 23, 2024) ("Cellwitch's only support for

15

its proposed construction of 'learning module' as a 'software component' is Dr. Goldberg's opinion, and attorney argument, both of which the Court finds unpersuasive."). *Cf. Invitrogen Corp. v. Clontech Lab'ys, Inc*., 429 F.3d 1052, 1068 (Fed. Cir. 2005) ("Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony.").

In contrast, Microsoft offers detailed expert testimony that a POSITA would find this term to be functional and indefinite. Dkt. 56-1 at ¶¶ 150-168.

***Third***, Plaintiff identifies no algorithm for performing the claimed functions of the "virtual controller server." *See, e.g.*, *Noah*, 675 F.3d at 1312; *Aristocrat*, 521 F.3d at 1338; *Parity*, 2020 WL 8569299, at *11. And Plaintiff provides no expert testimony that a POSITA would understand otherwise. *See Sisvel*, 82 F.4th at 1368.

***Fourth***, Plaintiff incorrectly argues that, even if "virtual controller server" does not connote sufficient structure on its own, "the claims themselves can provide enough context to make them structural." Dkt. 55 at 12. According to Plaintiff, "the claims describe in detail how the server and client are comprised of various software components and the operational algorithms of those components." *Id.* Yet, Plaintiff never even attempts to identify what allegedly constitutes the "various software components" or "the operational algorithms."

Plaintiff cases are misplaced. Each of *Skky, Inc. v. MindGeek, s.a.r.l.*, 859 F.3d 1014 (Fed. Cir. 2017), *TecSec, Inc. v. International Business Machines Corp.*, 731 F.3d 1336 (Fed. Cir. 2013), and *Linear Technology Corp.*, 379 F.3d, involved terms that, unlike "server," were found to have a well-understood structural meaning. Indeed, in *Skky*, the court determined that §112(f) was not invoked because "the claims do not recite a function or functions for the wireless device means to perform." 859 F.3d at 1020. In contrast, the "virtual controller server" here is tied to functional language with exemplary linking words (i.e., "configured to remotely communicate with a virtual controller client running on a remote mobile terminal"), and the only evidence of a POSITA's perspective is that "virtual controller server" does not have

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

16

DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

1   a well-understood structural meaning.  Dkt. 56-1 at ¶¶ 150-168.

2       Plaintiff' reliance on *Free Stream Media Corp. v. Alphonso Inc.*, No. 2:15-CV-

3   1725, 2017 WL 1165578 (E.D. Tex. Mar. 29, 2017), and *Maxell Ltd. v. Apple Inc.*,

4   No. 5:19-CV-00036, 2020 WL 10456875 (E.D. Tex. Mar. 18, 2020), is also

5   misplaced.  Dkt. 55 at 12-13.  In each of those cases, the specification either identified

6   very specific structure (e.g., the client device may be "a computer, a smartphone,

7   and/or another hardware that may be configured to initiate contact with a server to

8   make use of a resource," 2017 WL 1165578, at *24-25) or provided extensive

9   structural detail, including figures and descriptions of structural implementation (e.g.,

10  how the ringing sound generator was implemented within a circuit of a mobile

11  phone," 2020 WL 10456875, at *13-14).  In contrast, here, the "virtual controller

12  server" is not described as hardware at all; instead, it is—at best—described as

13  software "running on a computer."  Dkt. 56-2 at 1:62; 3:40-41; cls. 1, 11, 15.  Indeed,

14  that it is "running on a computer" confirms "virtual controller server" is not the

15  computer or hardware.

16      Accordingly, Term 6 is governed by § 112(f) and indefinite.

17  **7.    Term 7: "button setting generating unit" (claim 4)**

| Microsoft's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| Means plus function: | Plain and ordinary meaning |
| <u>Function</u>: "configured to generate and transmit, to the virtual controller client, first button setting information including a mapping relationship between key inputs to the application and associated virtual input messages …[and] is further configured to, in response to an occurrence of the event in the application, generate and transmit, to the virtual controller client, second button setting information including the dynamically changed virtual input message associated with the given key input." | |
| <u>Structure</u>: No corresponding structure disclosed. Therefore, the limitation is indefinite. | |

27      Plaintiff's arguments for Term 7 are generally the same as for the other "unit"

28  terms.  Plaintiff contends that Term 7 is "expressed in terms of the specific algorithm

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

17

DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

(i.e., structure) required to implement" the "unit." Dkt. 55 at 17. In Plaintiff's view, all "unit" terms "disclose their general purpose and algorithms within the claims themselves." *Id.* These arguments are incorrect for the same reasons discussed *supra* at Section II.A.1.

For Term 7, Plaintiff also argues that the "'button setting generating unit'… is described as being for 'button setting generating,'" and "[a] POSITA would understand that 'button setting generating unit' is a software module running within the 'virtual controller server in a computer.'" Dkt. 55 at 17-18. According to Plaintiff, "the 'button setting generating' algorithm used by the software in the claimed computer" is as follows:

> (1) generating first button setting information;
>
> (2) the first button setting information including a mapping relationship between key inputs and virtual input messages;
>
> (3) transmitting, to the virtual controller client, the first button setting information;
>
> (4) after an occurrence of an event in an application, generating a second button setting information including a dynamically changed virtual input message associated with a given key input; and
>
> (5) transmitting, to the virtual controller client, the second button setting information.

*Id.* at 18.

However, as described above, this is not an algorithm disclosing structure for the claimed functions. *See, e.g.*, *Noah*, 675 F.3d at 1312; *Aristocrat*, 521 F.3d at 1338; *Parity*, 2020 WL 8569299, at \*11. Indeed, Plaintiff provides no evidence of a POSITA's understanding to the contrary. *See Sisvel*, 82 F.4th at 1368.

In contrast, Microsoft's expert provides a full analysis of a POSITA's conclusion that this term is governed by § 112(f) and lacks any structure or algorithm in the specification for performing its recited function. Dkt. 56-1 at ¶¶ 186-200.

Thus, Term 7 is governed by § 112(f) and indefinite.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

18

DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

1

2

**8.    Term 8: "server message interfacing unit" (claims 4 and 5)**

| Microsoft's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| Means plus function: | Plain and ordinary meaning |
| Function: "configured to transmit a setting message including the first button setting information to the virtual controller client, and to receive a virtual input message from the virtual controller client, the virtual input message being generated based on a touch on the touch screen display device of the mobile terminal … [and] operable to receive a virtual input message generated based on a movement of the mobile terminal." | |
| Structure: No corresponding structure disclosed. Therefore, the limitation is indefinite. | |

3

4

5

6

7

8

9

10       Plaintiff does not provide separate argument or analysis for Term 8.  Instead,

11   Plaintiff relies on the same argument as provided for Term 1 and the other "unit"

12   terms.  Dkt. 55 at 14-21.  Indeed, Plaintiff's only distinct position for Term 8 is its

13   purported "algorithm."  *Id.* at 20.  Specifically, in regurgitating the recited function

14   itself, Plaintiff alleges that the algorithm is "(1) transmitting a setting message

15   including the first button setting information to the virtual controller client; and (2)

16   receiving a virtual input message from the virtual controller client, where the virtual

17   input message was generated based on a touch on the touch screen display device of

18   the mobile terminal" for claim 4 and "(3) being operable to receive a virtual input

19   message generated based on a movement of the mobile terminal" for claim 5.  *Id.*

20   But, as discussed *supra* at Section II.A.1, this is purely functional language from the

21   claim term itself and therefore is not a structural algorithm.

22       As set forth in Microsoft's Opening Brief (Dkt. 56 at 19), the language to

23   which Plaintiff points is the recited function of the "server message interfacing unit."

24   *See, e.g.*, *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1319

25   (Fed. Cir. 2003) ("The phrase 'means for' generally invokes 35 U.S.C.A. § 112, ¶ 6,

26   and is typically followed by the recited function and claim limitations. In identifying

27   the function of a means-plus-function claim, a claimed function may not be

28

19                                    DEFENDANT'S RESPONSIVE CLAIM
                                          CONSTRUCTION BRIEF

improperly narrowed or limited beyond the scope of the claim language. Conversely, neither may the function be improperly broadened by ignoring the clear limitations contained in the claim language. The function of a 'means plus function' claim must be construed to include the limitations contained in the claim language." (citations omitted)); *Creo Prods., Inc. v. Presstek, Inc*., 305 F.3d 1337, 1344 (Fed. Cir. 2002) (explaining that "[t]he function of a means-plus-function limitation…must come from the claim language itself").

The specification does not disclose any corresponding structure for performing these functions. Dkt. 56 at 19. For example, there is no recitation in the specification of any structural components or algorithm for performing each of the claimed functions. *Id.* at 18-19. Further, the "server message interfacing unit" is depicted in Figure 1 as only a black box without any details of its alleged structure. *Id.* at 19.

As Dr. Barrett's full and unrebutted opinion shows, a POSITA would have deemed this term purely functional under § 112(f) and indefinite for failure of the specification to provide any structure or algorithm for the term. Dkt. 56-1 at ¶¶ 201-216.

Thus, Term 8 is governed by § 112(f) and indefinite.

### 9. Term 9: "key mapping unit" (claims 4, 6, 7)

| Microsoft's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| Means plus function<br><br><u>Function</u>: "configured to identify a key input value mapped to the received virtual input message based on the first button setting information … [and] further configured to identify the key input value mapped to the dynamically changed virtual input message based on the second button setting information." Additionally, the recited function may include "transfer[ing] a key input value to the application via a message transfer architecture of an operating system that runs the application on the computer" and/or "transfer[ing] a key input value to the application via an input and output application programming interface (API) of an operating system that runs the application on the computer." | Plain and ordinary meaning |

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Los Angeles

20

DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

| Microsoft's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| Structure: No corresponding structure disclosed. Therefore, the limitation is indefinite. | |

As described in Microsoft's Opening Brief, neither the claims nor the specification provides structure for the lengthy functions of the "key mapping unit" (Term 9). *See* Dkt. 56 at 20. At best, the specification restates the same functional language from the claims, and Figure 1 shows "key mapping unit 13" as a black box without any details regarding its structure. *Id.*

Plaintiff provides the same argument for Term 10 as for the other "unit" terms. Plaintiff argues that all of the "unit" terms are "expressed in terms of the specific algorithm (i.e., structure) required to implement each claimed 'unit.'" *Id.* According to Plaintiff, the purported algorithm is the functional language identified in the claim. *Id.* at 20-21. As discussed *supra*, that functional language in the claim is not an algorithm and it is improper for Plaintiff to offer the claim language itself as the structure for performing the recited function of a limitation invoking § 112(f). *See, e.g.*, *Noah*, 675 F.3d at 1312; *Aristocrat*, 521 F.3d at 1338; *Parity*, 2020 WL 8569299, at *11. Again, Plaintiff provides no expert testimony in support of its position. *See Sisvel*, 82 F.4th at 1368.

Dr. Barrett has provided a full and unrebutted opinion as to why a POSITA would have deemed this term purely functional under § 112(f) and indefinite for failure of the specification to provide any structure or algorithm for the term. Dkt. 56-1 at ¶¶ 217-230.

Thus, Term 9 is governed by § 112(f) and indefinite.

### 10. Term 10: "virtual controller client" (claims 1, 2, 3, 4)

| Microsoft's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| Means plus function | Plain and ordinary meaning |
| Function: "configured to remotely communicate with a virtual controller server running on a computer for remote key input to an application running on the computer" | |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

21

DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

| Microsoft's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| <u>Structure</u>: No corresponding structure disclosed. Therefore, the limitation is indefinite. | |

In its Opening Brief, Microsoft explained how "virtual controller client" (Term 10) is indefinite because it is a MPF term without sufficient structure in the specification that is linked or associated with the term's function. *See* Dkt. 56 at 21-22. Although the claims explain at a high level that the "virtual controller client" comprises other "units," "interfaces," or "filters"—which are themselves indefinite for the reasons discussed above—neither the claims nor the specification describe how the "virtual controller client" allegedly "interacts with other components…in a way that might inform the structural character of the limitation-in-question or otherwise impart structure" to the "virtual controller client." *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1383 (Fed. Cir. 2025) (quoting *Williamson*, 792 F.3d at 1351).

Plaintiff mostly regurgitates the same arguments for Term 10 as made for Term 6 ("virtual controller server"), all of which are unavailing for the reasons discussed *supra* at Section II.A.6. The only distinct argument that Plaintiff appears to make for this term is that the "virtual controller client" (Term 10) is described as "running on a remote mobile terminal," rather than on a computer. Dkt. 55 at 8-9. On the contrary, as with the "virtual controller server" (Term 6) this merely shows that the "virtual controller client" (Term 10) is software, not the mobile terminal itself, and Plaintiff does not (and cannot) identify sufficient structure.

Dr. Barrett has provided a full and unrebutted opinion as to why a POSITA would have deemed this term purely functional under § 112(f) and indefinite for failure of the specification to provide any structure or algorithm for the term. Dkt. 56-1 at ¶¶ 68-83.

Accordingly, Term 10 is indefinite.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

22                                    DEFENDANT'S RESPONSIVE CLAIM
                                      CONSTRUCTION BRIEF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.     The Disputed Terms of the '055 Patent**

**1.     Term 1: "facing each other" (claim 1)**

The parties agree that Term 1 should be construed as "disposed opposite each other."  *See* Dkt. 56-25.

**2.     Term 2: "unipolar magnets" (claim 40)**

| Microsoft's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| Indefiniteness based on 35 U.S.C. § 112 | Plain and ordinary meaning, which is "magnets that each have a face with a single pole" |

As Microsoft demonstrated through intrinsic and extrinsic evidence (Dkt. 56 at 22-25), Term 2 requires a scientific impossibility.  *Synchronoss Techs.*, 987 F.3d at 1366–67.  Both Dr. Barrett and Dr. Mansuripur have seemingly agreed that there is no such thing as a "unipolar magnet."  Dkt. 56-1 at ¶ 58; Dkt. 55-4 at 3-4.

Rather than argue for the existence of "unipolar magnets," Plaintiff essentially asks the Court to remove the nonsensical term "unipolar magnets" from the claim and replace it with language that the patentee may have intended to claim instead. Plaintiff suggests replacing "unipolar magnets" with the phrase "magnets that each have a face with a single pole" (*i.e.*, a dipolar magnet).  *See e.g.,* Dkt. 55 at 4.  This would be impermissible rewriting of the claim.   The claims require "unipolar magnets," and this means magnets that exhibit a single magnetic polarity.  *See* Dkt. 56 at 24-25.  Courts may not "rewrite claims to preserve validity."  *Pfizer, Inc. v. Ranbaxy Lab'ys Ltd.*, 457 F.3d 1284, 1292 (Fed. Cir. 2006) ("We recognize that the patentee was attempting to claim what might otherwise have been patentable subject matter. Indeed, claim 6 could have been properly drafted either as dependent from claim 1 or as an independent claim… But, we 'should not rewrite claims to preserve validity.'" (citation omitted)).  This is true even where one could *guess* at what the patentee intended to claim.  *See id.*  And it is true even if the claim as drafted is nonsensical such that it "could not perform the function the patentees intended." *Chef America*, 358 F.3d at 1374-75.  *See also Source Vagabond Sys. Ltd. v. Hydrapak,*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

23

DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

*Inc.*, 753 F.3d 1291, 1301 (Fed. Cir. 2014) ("Source read[s] the claim to avoid a nonsensical result . . . However, Source should have known it could not prevail because a court may not rewrite a claim even if giving a disputed claim its plain meaning would lead to a 'nonsensical result.'"); *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999) ("Rather, where as here, claims are susceptible to only one reasonable interpretation and that interpretation results in a nonsensical construction of the claim as a whole, the claim must be invalidated"); *Generation II Orthotics Inc. v. Med. Tech. Inc.*, 263 F.3d 1356, 1365 (Fed. Cir. 2001) ("[C]laims can only be construed to preserve their validity where the proposed claim construction is 'practicable,' is based on sound claim construction principles, and does not revise or ignore the explicit language of the claims.").

Here, the parties or the Court may be able to surmise that "unipolar magnets" was not what the patentee intended, and that the patentee likely intended a different meaning. Even if this the case, the claim should not be rewritten. The claim as drafted is nonsensical and should be deemed indefinite.

Plaintiff's argument is wrong for numerous additional reasons.

***First***, Plaintiff incorrectly suggests that the opinions of Microsoft's expert Dr. Mansuripur in the related IPR proceeding indicates the parties "previously agreed" to Plaintiff' proposed construction. *See* Dkt. 55 at 5. Microsoft was not permitted to assert indefiniteness in the IPR because, by statute, indefiniteness challenges are not available in that proceeding. *See Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1350 (Fed. Cir. 2020) ("The statutory provisions governing the inter partes review process do not permit the Board to institute inter partes review of claims for indefiniteness"). Indeed, in the IPR Petition, Microsoft stated that "[a]t this time," it "does not believe construction of any term is necessary to resolve the invalidity challenges." IPR2025-00767, Paper 1 (Petition) at 6. Petitioners regularly file IPR petitions that challenge the validity of the claims under grounds of anticipation and obviousness while separately challenging indefiniteness in a district court proceeding

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

24

DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

1    where they are permitted to do so.

2         **Second**, Plaintiff's citation to intrinsic evidence to support a POSITA's

3    understanding serves to confirm that "unipolar magnets" is nonsensical and would

4    require an impossibility.  *See* Dkt. 55 at 6; Dkt. 56 at 22-25.  For example, Plaintiff

5    cites claim language referring to "a pair of unipolar magnets" that interacts with "a

6    plurality of coils connected to an electric circuit" "to create an electromagnetic force

7    to move the blade" as support for how a POSITA would understand Term 2.  Dkt. 55

8    at 5-6.  Plaintiff's own explanation concedes that a POSITA would understand the

9    claim to requires a magnetic field produced by interactions of "both a north and south

10   pole."  *Id.*  This aligns with Dr. Barrett's and Dr. Mansuripur's understanding that a

11   magnet with only a single pole (*i.e.*, a "unipolar magnet") could not perform the

12   claimed function and does not exist.  *See*, *e.g.,* Dkt. 56-1 at ¶¶ 57-58

13        Third, Dr. Mansuripur concedes that "[a] true unipolar magnet does not exist,

14   and all magnets are bipolar, which means the magnet has a north pole and a south

15   pole."  *See* Dkt. 55-5 at ¶ 67.  Plaintiff points to Dr. Mansuripur's statement that "[i]n

16   the optical pickup actuator context, a unipolar magnet refers to using the magnet such

17   that only one pole-either north or south (but not both)-faces and interacts with a

18   particular coil."  Dkt. 55 at 4.  This is consistent with Dr. Barrett and supports the

19   conclusion that magnets have two poles and that there is no such thing as the claimed

20   "unipolar magnet."  Dkt. 56-1 at ¶ 58.

21        Claim terms must "inform, with reasonable certainty, those skilled in the art

22   about the scope of the invention."  *Nautilus v. Biosig Instruments, Inc.*, 572 U.S. 898,

23   901 (2014).  "Unipolar magnets" fails that test and cannot be rewritten to preserve

24   the claim's validity.  The term should be held indefinite.  *See* Dkt. 56 at 22-25.

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

25                                                    DEFENDANT'S RESPONSIVE CLAIM
                                                        CONSTRUCTION BRIEF

1

2
Dated:        September 25, 2025              MORGAN, LEWIS & BOCKIUS LLP

3

4
By  */s/ Andrew V. Devkar*
MORGAN, LEWIS, & BOCKIUS,
LLP

5
Andrew V. Devkar

6
2049 Century Park East
Suite 700

7
Los Angeles, CA 90067-3109
Tel: 310.907.1000

8
andrew.devkar@morganlewis.com

9

10
Natalie A. Bennett (*pro hac vice*)
1111 Pennsylvania Ave. NW

11
Washington, DC 20004-2541
Tel: 212.739.3000

12
natalie.bennett@morganlewis.com

13

14
*Attorneys for Defendant Microsoft
Corporation*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

26              DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

1

## <u>CERTIFICATE OF SERVICE</u>

2

3
       I certify that on September 25, 2025, I caused a true and correct copy of the foregoing

4
document to be served on the counsel of record for Plaintiff via the Court's ECF system.

5

6

7
                        /s/ *Andrew V. Devkar*

8
                        Andrew V. Devkar

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

27

DEFENDANT'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF